IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

    Plaintiff,

v.                        Case No.: 24-cv-687

$13,960.00 IN U.S. CURRENCY,

    Defendant.

---

VERIFIED COMPLAINT IN REM

---

Plaintiff, United States of America, by its attorneys, Timothy M. O'Shea, United States Attorney for the Western District of Wisconsin, and by Heidi L. Luehring, Assistant United States Attorney, brings this complaint and alleges as follows in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure. The allegations in this Complaint are supported by a declaration from Special Agent Daniel Diaz with the Federal Bureau of Investigation.

    1.    This is a civil action *in rem* brought to enforce the provision of 21 U.S.C. § 881(a)(6) for the forfeiture of all moneys furnished or intended to be furnished in exchange for a controlled substance, all proceeds traceable to such an exchange, and all moneys used or intended to be used to facilitate a violation of Title II of the Controlled Substances Act, 21 U.S.C. §§ 801 *et seq.*

2. The defendant property consists of $13,960.00 in U.S. currency seized by the Federal Bureau of Investigation (FBI) on April 15, 2024, at 119652 Balsam Road, Stratford, Wisconsin.

3. Plaintiff brings this action *in rem* to forfeit and condemn the defendant property. This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345 and over an action for forfeiture under 28 U.S.C. § 1355(a).

4. This Court has *in rem* jurisdiction over the defendant property under 28 U.S.C. § 1355(b). Upon the filing of this complaint, the plaintiff requests that the Court issue an arrest warrant *in rem,* pursuant to Supplemental Rule G(3)(b), which the plaintiff will execute upon the property pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

5. The defendant property is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because it constitutes 1) money, negotiable instruments, securities and other things of value furnished and intended to be furnished in exchange for a controlled substance in violation of the Controlled Substances Act; 2) proceeds traceable to such an exchange; and 3) money, negotiable instruments, and securities used and intended to be used to facilitate a violation of the Controlled Substances Act.

6.	On February 25, 2024, CI-2[1] provided information that Joshua Lake (Lake) was willing to sell methamphetamine to CI-2. CI-2 had an established narcotics relationship with Lake and had received methamphetamine from Lake in the past. Lake would sometimes deliver methamphetamine to CI- 2 or CI-2 would meet Lake in Stratford, Wisconsin. CI-2 was tasked with ordering a quarter pound of methamphetamine from Lake. CI-2 reported that Lake directed CI-2 to 119652 Balsam Road, Stratford, Wisconsin.

7.	On February 26, 2024, CI-2 conducted a controlled purchase of 118.5 grams of methamphetamine from Lake at 119650/119652 Balsam Road, Stratford, Wisconsin[2] for $1200. The controlled purchase was audio recorded. The following occurred during the controlled purchase:

   a.	CI-2 and Lake had agreed to meet in at the Dollar General in Stratford, Wisconsin for the purchase. Once CI-2 arrived in Stratford, Lake directed CI-2 to 119652 Balsam Road, Stratford, Wisconsin. CI-2 reported that the location was Lake's house.

   b.	CI-2 was surveilled by members of the CWNTF travelling to 119652 Balsam Road, Stratford, Wisconsin. CI-2 reported Lake met CI-2 outside of the residence. CI-2 was at the location approximately 10-15 minutes and then left 119652 Balsam Road, Stratford, Wisconsin.

---

[1] CI-2 was working for monetary compensation. CI-2 had provided accurate information in the past. CI-2's statements have been corroborated through other investigative means. CI-2 has no criminal convictions. CI-2's statements were provided voluntarily and were against CI-2's penal interests.

[2] The building at 119650/119652 Balsam Road, Stratford, Wisconsin is a residential duplex. Law enforcement later identified 119652 Balsam Road as the residence of Lake's parents, Laura Lake and Russell Lake. The east side of the duplex is 119650 Balsam Road and is identified as the residence of Joshua Lake and Jessica Colby.

3

      c. CI-2 was surveilled to a pre-arranged meeting location where CI-2 turned over 118.5 grams of methamphetamine.

      d. CI-2 reported they received methamphetamine from Lake in exchange for the $1,200 in prerecorded buy money.

      e. A presumptive test of the 118.5 grams of methamphetamine was conducted using a TruNarc analyzer. The substance tested positive for methamphetamine.

8. On March 1, 2024, law enforcement interviewed Mercadys Perkins. In a post-Miranda statement Perkins stated that on or about February 25, 2024, Perkins picked up 1 lb. of methamphetamine from Joshua Lake. Perkins stated the agreed upon price was $5,500.00 for the pound. Perkins stated she paid approximately $4,200.00 with the rest remaining methamphetamine fronted. Perkins later paid a total of approximately $800 electronically to Lake and Lake agreed to forgive the remaining amount.

9. A consent search of Perkins' phone corroborated Perkins' information. The phone showed Perkins electronically transferred a total of $3756 to Josh Lake between February 20, 2024 and February 28, 2024 using CashApp.

10. On March 18, 2024, law enforcement applied for and was granted a cell phone GPS warrant to track Perkins' phone (with the number 715-216-2362).

11. On March 19, 2024, Perkins' phone location data showed that she was in the Stratford area about a 2-minute drive from Lake's residence. This was from approximately 10:39 a.m. to 12:54 p.m. Perkins' phone location data then showed her

4

Here:
back in the Wausau area around 2:39 p.m. Phone tolls for Perkins' 715-216-2362 number showed that she had contact with Lake's phone number of 608-433-8109 at 10:07 a.m. and 10:45 a.m. on March 19, 2024. A search of open records showed that 608-433-8109 is an AT&T number and belongs to Joshua Lake. A check of 608-433-8109 in CashApp also showed that phone number belongs to Lake.

12. On March 25, 2024 Perkins' phone location data indicated she was traveling west from Wausau, Wisconsin at approximately 2:09 p.m. The location data showed Perkins traveled to an area just north of Stratford, Wisconsin around 2:39 p.m. Law enforcement attempted to locate Perkins but was unable to find her. Perkins next location was in a similar spot north of Stratford at 2:54 p.m. The phone locations then proceeded to head back to the east around 3:09 p.m. and paused in the Knowlton area for about an hour (from 3:39 p.m. to 4:39 p.m.). The phone ultimately ended in the area of Perkins' residence at 6300 Birch Street Weston, Wisconsin[3] around 5:39 p.m. This shows that Perkins traveled to an area close to Lake's residence. Therefore, Perkins had enough time to meet with Lake, pick up the methamphetamine in the approximately 15 minutes between the pings received.

13. On March 25, 2024, at approximately 7:00 p.m., the CWNTF conducted a controlled purchase of 55.5g of methamphetamine from Perkins at 6300 Birch Street, Lot

---

[3] Law enforcement determined this is also the residence of Dustin Brunker.

213, Weston, Wisconsin for $750. The controlled purchase was audio and video recorded. The following occurred during the controlled purchase:

a. CI-3[4] and Perkins had agreed to meet at Perkins' residence (listed above). The agreed upon deal was for 2 ounces for $800.

b. While waiting to meet with Perkins, CI-3 called Perkins. Perkins stated that she was driving and would contact CI-3 when Perkins was ready. This occurred while Perkins phone pings were eastbound from Stratford. CI-3 went to Perkins residence prior to Perkins calling her.

c. CI-3 was surveilled by members of the CWNTF travelling to Perkins residence. Once there Perkins changed the deal to 1/8 ounce less and $50 cheaper than previously agreed upon.

d. Once the deal was complete, CI-3 was surveilled to a pre-determined location to turn over any extra money and the purchased methamphetamine.

e. CI-3 reported that they purchased the methamphetamine from Perkins. CI-3 also reported that Perkins was breaking down approximately a pound of methamphetamine on a table in the living room. CI-3 witnessed Perkins weighing and bagging smaller quantities of methamphetamine for resale. CI-3 reported that this was typical behavior for having just purchased a bulk amount of methamphetamine.

f. A presumptive test of the 55.5 grams of methamphetamine was conducted using a TruNarc analyzer. The substance tested positive for methamphetamine.

---

[4] CI-3 was working for monetary compensation and consideration on pending municipal charges. CI-3 had provided accurate information in the past. CI-3's statements have been corroborated through other investigative means. CI-3 has the following criminal convictions: felony drugs, misdemeanor bail jumping, theft, and felony fraud. CI-3's statements were provided voluntarily and were against CI-3's penal interests.

14. Prerecorded buy money from CI-3's March 25, 2024, controlled buy was later located in a safe at the residence of Laura Lake and Russell Lake, during an April 15, 2024 search warrant execution.

15. On February 28, 2024, the CWDTF received information that Amanda Ronek was trafficking drugs, specifically methamphetamine. The CWDTF conducted several controlled purchases of methamphetamine from Ronek utilizing a confidential informant. These buys were conducted on February 28, 2024, March 1, 2024, and March 13, 2024. In total, CWDTF purchased 47.5g of methamphetamine during the three controlled buys. Prerecorded buy money from the controlled the CWDTF's buy on March 13, 2024, was later located in the safe at the residence of Laura and Russel Lake, during an April 15, 2024 search warrant execution.

16. On March 14, 2024, a search warrant authorized a GPS tracker for Ronek's vehicle. The GPS tracker was installed on March 14, 2024.

17. On March 26, 2024, law enforcement conducted physical surveillance of Ronek contemporaneously with review of the GPS data. The GPS data showed that Ronek's vehicle stopped at 119650/119652 Balsam Road, Stratford, Wisconsin 3:49 p.m., 4:15 p.m. and 4:37p.m.

18. While conducting the above surveillance, law enforcement observed Ronek operating the vehicle leaving the area of 119650/119652 Balsam Road, Stratford, Wisconsin on March 26, 2024 shortly after 4:37p.m.

7

19. On April 10, 2024 at 7:28 p.m., the Marshfield Police Department conducted a traffic stop of Ronek in Marshfield, WI for a Municipal Violation (Using Cell Phone while driving). The following occurred during the vehicle stop:

   a. An open-air sniff of Ronek's vehicle was conducted by a Marshfield K-9 and resulted in a positive alert.

   b. A search of the vehicle revealed 167.9 grams of methamphetamine in a shopping bag located between the two front seats. The methamphetamine was in a heat-sealed plastic bag.

   c. The methamphetamine was presumptively tested using a Narc II kit. The presumptive test revealed the substance to be methamphetamine.

   d. During a post Miranda interview, Ronek admitted she picked up the methamphetamine for her own use. Ronek did not disclose from where she picked up the methamphetamine.

20. A review of Ronek's GPS data for April 10, 2024, showed that the vehicle travelled to 119650/119652 Balsam Road, Stratford, Wisconsin at 6:21 pm. The vehicle remained at 119650/119652 Balsam Road, Stratford, WI until 6:45 p.m. The vehicle made a brief stop at the storage units located at Highway 97 and Balsam Road between 6:48 p.m. and 6:57 p.m. The vehicle then travelled to Marshfield, Wisconsin where it was stopped by officers.

21. The GPS data described above, shows Ronek travelled to Lake's residence to pick up the methamphetamine found in her possession.

22. A check of Lake's driver license showed his residence to be 119652 Balsam Road, Stratford, WI and was issued on April 27, 2022. A check of the Wisconsin Circuit

Court Access website showed that Lake's listed address was 119652 Balsam Road, Stratford, Wisconsin on November 7, 2023 in Marathon County Circuit Court Case number 2023SC001875.

23. On April 12, 2024, law enforcement conducted surveillance at the Lake's residence. Law enforcement observed a female that matched the description of Joshua Lake's mother, Laura Lake. Laura was observed going in and out of the east side residential area (119652 Balsam Road) of the building multiple times, shortly after 1 p.m. A check of Marathon County Sheriff's Office records showed that Laura Lake gave a home address of 119652 Balsam Road, Stratford, Wisconsin in 2020 and November of 2023.

24. On April 12, 2024, law enforcement conducted surveillance at the target residence. An officer visually identified a male subject as Joshua Lake. Lake was seen exiting the east side residential area (119652 Balsam Road) of the building and leaving in a black Pontiac G6. Law enforcement observed the Wisconsin registration number of D2402ME. A check of the Wisconsin TIME system showed that the vehicle was registered to Joshua Lee Lake and Jessica Leigh Colby at 119650 Balsam Road, Stratford, Wisconsin 54484. The vehicle returned to the driveway a short time later. The officer then observed Lake go into the west side residential area (119650 Balsam Road) of the building.

25. Josh Lake has access to the entire building marked as 119650 and 119652 Balsam Road, Stratford, Wisconsin.

26. On April 15, 2024, law enforcement executed a search warrant at the duplex identified as 119650 and 119652 Balsam Road, Stratford, Wisconsin. Law enforcement executed the search warrant at the residence of Joshua Lake and Jessica Colby located at 119650 Balsam Road, Stratford, Wisconsin. On his side of the duplex, officers located approximately 2169.5 grams of methamphetamine, approximately 1072 grams of cocaine, THC wax, a HK 9mm carabine firearm, a total of $25,576.00 in U.S. currency[5] and miscellaneous drug paraphernalia including but not limited to: pipes, vacuum sealer, plastic sealing bags, scales, and drug ledgers.

27. Law enforcement executed a search warrant at the residence of Laura Lake and Russell Lake identified as 119652 Balsam Road, Stratford, Wisconsin. Inside the residence, law enforcement located a safe, in the master bedroom closet containing three stacks of currency totaling approximately $15,080.00 in U.S. currency.

28. Approximately $1,000.00[6] was in an envelope labeled "Josh rent money."

---

[5] Law enforcement compared the $25,576.00 to the controlled buy money used in this investigation and located $1,500.00 in prerecorded buy money. This currency is subject to forfeiture in a current administrative and criminal action.

[6] The currency consisted of 8- $100 bills and 10- $20 bills.

29. Law enforcement compared the $1,000.00 to the controlled buy money used in this investigation and located a $20 bill in prerecorded controlled buy money from the March 13, 2024, purchase of methamphetamine from Amanda Ronek.

30. Approximately $1,100.00 was labeled "maple syrup."

31. Law enforcement compared the $1,100.00 to the controlled buy money used in this investigation and did not locate any buy funds.[7]

32. The remaining $12,980.00[8] was compared to the controlled buy money used in this investigation and located a $20 bill in prerecorded controlled buy money from the March 25, 2024 purchase of methamphetamine from Mercadys Perkins.

33. On April 15, 2024, in a statement to law enforcement, Russell L. Lake (Russell), acknowledged large amounts of cash located in their safe. Russell stated most of the cash was an inheritance from his mother. He estimated he had approximately $14,000 in the safe. Russell stated Joshua has been unemployed for approximately one year. Russell was made aware there was an envelope with cash which was labeled Josh's rent found in the safe. Russell stated Joshua pays him rent. Russell indicated Joshua has been living at 119650 Balsam Road since September of 2023. Russell stated Joshua does not have a key to their side of the residence, but Joshua does have access to their residence.

---

[7] It is the governments intent to return these funds Laura and Russell Lake once they are no longer needed as evidence.

[8] The $12,980.00 consisted of 133-$100 bills, 2-$50 bills, and 34-$20 bills.

34. On April 16, 2024, in a mirandized interview with Joshua Lake, Lake admitted to trafficking large quantities of methamphetamine. He began receiving ounces of meth in July/August 2023. He then moved to a different source that provided him pounds of meth. Eventually he was picking up and selling 5 pounds of meth every 4-5 days, selling it in the Marathon and Wood County areas. Lake admitted to picking up 4.5 lbs. of meth and then making a second stop to pick up a brick/kilo of cocaine from a different source. Lake said he had been selling to Dustin Brunker and Mercadys Perkins. He sold them 1 lb. of meth for $4,000 every few days and estimated selling them a total of about 6-8 lbs. Lake had a job with Dairy Farmers of America for three days in February of 2024. Lake said the majority of the money he had "put away" was from drug proceeds. Lake also stated he had several bank accounts. Lake said the HK 9mm carabine firearm in his closet was given to him to pay off a drug debt for previously fronted methamphetamine (approximately 2-2.5 lbs. of meth about two weeks prior). Lake said the $20,000 in $100-dollar bills located in the manila envelopes were all drug proceeds. Lake said he had access to both sides of the house located at 119650/119652 Balsam Road, Stratford, Wisconsin.

35. In a later interview on April 22, 2024, Lake said that Brunker and Perkins were getting a ¼ lb. of meth every night starting in March. That increased to ½ lb. every 3-4 days before getting a pound every 4-6 days. Lake talked to both Perkins and Bunker about methamphetamine quantities and prices. They paid him in cash and on Cash

12

App. Lake said that Colby sold some drugs for him, but he didn't want to get her in trouble.

36. In a third interview on May 3, 2024, Lake said Colby had picked up 5 lbs. of meth by herself during the third week of March.

37. On April 24, 2024, in a mirandized interview, Colby said there was a brick of cocaine at the house at the time it was searched. Colby said she would travel with Lake to the Minneapolis/St. Paul area to pick up drugs. She described her role as the driver because Lake couldn't stay awake when they drove. Colby knew they were going to pick up drugs. She was familiar with some of Lake's suppliers but had not met them all. Colby admitted to selling "a ball here and there." When pressed she admitted to delivering drugs to Perkins on Lake's behalf and thought it was 2-3 ounces.

38. Any additional facts and circumstances supporting the seizure of the defendant property are contained within the attached declaration and incorporated herein this complaint.

WHEREFORE, the United States of America prays:

(1) that process of warrant be issued for the arrest of the defendant property;

(2) that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed;

(3) that judgment be entered ordering the property to be forfeited to the United States of America for disposition according to law; and

(4)     that the United States of America be granted such other relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Respectfully submitted this 1st day of October 2024.

                         TIMOTHY M. O'SHEA
                         United States Attorney

By: */s/ Heidi L. Luehring*
     HEIDI L. LUEHRING
     Assistant U. S. Attorney
     222 W. Washington Avenue
     Suite 700
     Madison, Wisconsin 53703